```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
------------------------------------------------

JIMMY LOZANO,

                Petitioner,         17cv357 (JGK)

      - against -            **MEMORANDUM OPINION & ORDER**

UNITED STATES OF AMERICA,

                Respondent.

------------------------------------------------

**JOHN G. KOELTL, District Judge:**

In 2004, the petitioner pleaded guilty to one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951 before this Court (the "SDNY case"). He was convicted and sentenced in November 2005 principally to 33 months' imprisonment and he was released in February 2006. The petitioner claims that, because the State Department issued him a passport in 2002, which was apparently issued in error through no fault of the petitioner, the petitioner was unaware that his guilty plea in the SDNY case could be used to remove him from the United States. In August 2015, the petitioner pleaded guilty in the District of Vermont to a conspiracy in violation of 21 U.S.C. § 846 to distribute a controlled substance (the "Vermont case"). In June 2016, the petitioner was sentenced to time served to be followed by three years' supervised release in the Vermont case.

In 2017, the petitioner brought a coram nobis petition in this Court seeking to vacate his conviction and sentence in the

SDNY case on the ground that his guilty plea was involuntary and unknowing because he did not know that his conviction could be a basis for removing him from the United States.[1] In its previous decision, this Court concluded that ignorance of the immigration consequences of his plea did not rise to the level of a Fifth Amendment violation and therefore did not render his plea insufficiently knowing and voluntary. See Lozano, 2017 WL 4712711, at *8. The petitioner appealed this Court's denial of his coram nobis petition. Pursuant to United States v. Jacobson, 15 F.3d 19 (2d Cir. 1994), the Court of Appeals for the Second Circuit remanded the case to this Court for a determination of two preliminary issues: (1) whether sound reasons exist for Lozano's failure to seek appropriate earlier relief, in view of the fact that the presentence report ("PSR") in the SDNY case reported that Lozano was not a United States citizen; and (2) whether Lozano would not have entered a guilty plea in the SDNY case had he known that he was subject to deportation as a result of his conviction. Lozano v. United States, 763 F. App'x 9, 11-12 (2d Cir. 2019).

In order to resolve these preliminary issues, this Court held an evidentiary hearing on September 26, 2019. The parties

---

[1] The facts underlying the petition are recounted in full in this Court's earlier opinion, familiarity with which is assumed. See Lozano v. United States, No. 17-cv-357, 2017 WL 4712711 (S.D.N.Y. Oct. 17, 2017).

had the opportunity to present evidence, both by introducing documents and by calling witnesses, by subpoena if necessary. At the evidentiary hearing, only the petitioner testified at which time he was questioned by counsel for the petitioner and the government as well as by the Court. The parties also submitted documentary evidence.

The Court, having conducted the evidentiary hearing, reviewed the evidentiary submissions, and assessed the credibility of the petitioner, now makes the following findings of fact and conclusions of law in accordance with the mandate of the Court of Appeals.

**I.**

The evidence supports the petitioner's assertions that, at the time of his guilty plea in the SDNY case, he and his lawyer believed he was a citizen of the United States and that therefore the petitioner was not concerned about the immigration consequences of his plea. Pet. Ex. B, at 12-13; Evid. Tr. (Dkt. No. 42) 17-18. Despite the fact that the PSR in the SDNY case indicated he was only a lawful permanent resident, the petitioner reasonably believed that determination was an error because he thought he had become a citizen when his mother was naturalized. Evid. Tr. 12-13. He had received a United States passport in 2002 and all of the responses to the questions on the passport application were accurate. Id. at 13; Pet. Ex. A.

Further, the PSR itself incorrectly stated that the defendant's official date of entry into the United States was January 31, 1998, leading to the reasonable conclusion that the PSR mistakenly relied on information concerning an individual other than the petitioner. GX 3 ¶ 38; Evid. Tr. 21. ICE agents subsequently visited the petitioner but were persuaded by the existence of the passport that the petitioner was a citizen of the United States. Evid. Tr. 26-27. The petitioner was subsequently admitted into a halfway house following his sentence, which would not have occurred had the authorities believed he was subject to deportation by virtue of his not being a United States citizen. Id. at 24-25. In 2013, the petitioner applied for a renewed passport at which point he again answered the questions accurately and again was issued a passport. Pet. Ex. F; Evid. Tr. 29.

Based on these factual findings, the first time that the petitioner could reasonably have concluded that he was not a citizen and was subject to removal for a conviction was when he received the 2015 PSR in the Vermont case. The Vermont PSR explained why the petitioner could not rely on his prior belief that he was a citizen:

> The defendant reported that he was a naturalized United States citizen. He explained that his mother applied for citizenship prior to his attaining the age of 18, so he also become a U.S. citizen when she became a citizen. A records check with ICE indicated

4

> that the defendant was a naturalized U.S. citizen.
> However, shortly after the records check with ICE
> confirmed his citizenship, this writer was contacted
> by an ICE-Enforcement and Removal Operations (ICE-ERO)
> agent. The agent indicated that there are some issues
> with the defendant's citizenship claims and he may not
> be a U.S. citizen after all. The agent explained that
> Lozano was a Lawful Permanent Resident (a requirement
> prior to obtaining citizenship), but was 19 years of
> age when his mother became a citizen on July 24, 2000.
> In order for the defendant to have derived citizenship
> from his mother, she would have to have been sworn in
> as a U.S. citizen prior to the defendant's 18th
> birthday, regardless of how old he was when the
> application was first filed.

GX 7 ¶ 69. Therefore, it was only in November 2015, upon receipt of the Vermont PSR that he was on notice that he should move to vacate his conviction and sentence in the SDNY case that had occurred ten years before.

It cannot be said that the 14-month delay between November 2015 and the time this petition was filed in January 2017 was so unreasonable that the petition should be denied on that basis. See Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996) ("A district court considering the timeliness of a petition for a writ of error coram nobis must decide the issue in light of the circumstances of the individual case."); Yong Wong Park v. United States, 222 F. App'x 82, 83 (2d Cir. 2007) ("Although Park filed his petition for a writ of coram nobis almost five years after he pleaded guilty . . . Park has shown sound reasons for failing to seek relief earlier. Only in July 2004, when Park was charged with being deportable as an aggravated felon, did it

5

become apparent that his plea had irreversible immigration consequences[.]"); see also Guglielmetti v. United States, No. Cr. H-90-18, 2006 WL 2361725, at *4 (D. Conn. Aug. 14, 2006) ("[C]ourts have generally found that delays of more than several years justify dismissal.").

Therefore, with respect to the first question posed by the Court of Appeals in its mandate, sound reasons exist for Lozano's failure to seek appropriate relief earlier than when he did because he could not reasonably have been expected to inquire into his citizenship status prior to November 2015.

## II.

However, the petitioner has failed to establish that he would not have pleaded guilty in the SDNY case if he had been aware that a conviction pursuant to his guilty plea would subject him to removal from the United States. Specifically, the petitioner has failed to show a reasonable probability that, if he had known of the immigration consequences of his guilty plea "he would not have pleaded guilty and would have insisted on going to trial." Lozano, 763 F. App'x at 12 (quoting Ferrara v. United States, 456 F.3d 278, 293-94 (1st Cir. 2006)).

As explained above, by the time he received the PSR in the Vermont case, which was before he was sentenced in that case, he was aware that the immigration authorities were contending that he was not a citizen of the United States, and that his

6

conviction in that case would subject him to removal from the United States. Yet, the petitioner did not seek to withdraw his guilty plea in the Vermont case. Rather, and unlike at sentencing in the SDNY case, the petitioner affirmatively argued to the judge in Vermont that he should be afforded leniency because he would be removed from the United States and that he would therefore not be able to see his daughter grow up. GX 8, at 2; GX 11, at 11-12. Despite full knowledge of the immigration consequences of the plea, the petitioner proceeded to sentencing in the Vermont case and affirmatively placed the issue of his removal before the court at sentencing.

The government argues that the failure to withdraw his guilty plea in Vermont demonstrates that he would not have withdrawn his guilty plea in the SDNY case in 2005 had he been informed of the deportation consequences of that plea. But the Government overreads the cases on which it relies. In those cases, the courts found it significant that the defendant learned – after a guilty plea but before sentence – of the immigration consequences of the plea in the case itself and did not withdraw the plea prior to sentencing. See United States v. Richards, 667 F. App'x 336, 338 (2d Cir. 2016) (immigration consequences); United States v. Francis, 560 F. App'x 106, 106 (2d Cir. 2014) (same); see also United States v. Vaval, 404 F.3d 144, 152 (2d Cir. 2005) (Rule 11 generally); United States v.

7

Cacace, 289 F. App'x 440, 441-42 (2d Cir. 2008) (restitution consequences).

But the circumstances of the two pleas relevant to this petition were quite distinct. The possible sentence for a conviction in the Vermont case was far more significant and the guilty plea in the Vermont case occurred ten years after the plea in the SDNY case. The cases cited by the Government do not dictate the result under these circumstances and no direct inference about whether the petitioner would have pleaded guilty in the SDNY case had he known then of the immigration consequences can be drawn from the fact that he did not withdraw his plea in the Vermont case.

However, the guilty plea in the Vermont case is relevant to the resolution of the second question posed by the Court of Appeals – whether the defendant would have pleaded guilty in the SDNY case in 2005 had he known of the immigration consequences of that plea – because the defendant's credibility is crucial to answering that question and the defendant's statements about the Vermont case undermine the petitioner's credibility. The petitioner was faced with the need to explain why it was credible that he would not have proceeded with his guilty plea in 2005 if he had been aware of the immigration consequences of his plea when he went forward with his sentence in Vermont after becoming aware of the immigration consequences of that plea.

Initially, the petitioner simply denied that he was aware of the immigration consequences of his plea in Vermont until after he had been sentenced in Vermont. In January 2017, he stated in a sworn declaration in support of his current petition that he only became aware "of any claim by the Department of State that I was not a United States citizen" after he had been sentenced in Vermont. GX 14 ¶ 36. But that statement was plainly false. The petitioner was aware of his immigration status and the immigration consequences before he was sentenced in Vermont because the facts appeared in the Vermont PSR and the petitioner relied on the possible immigration consequences of a conviction to seek leniency at sentencing. GX 7, at 14, 20; GX 11, at 10-12.

Then at the evidentiary hearing in this case, the petitioner asserted that, even though he sought leniency from the sentencing court in Vermont based on his likely removal from the United States, he did not actually believe he would be removed from the United States, only "subject to deportation." Evid. Tr. 65-66, 73-74. Eventually, he conceded in the evidentiary hearing that he was not truthful with the judge in Vermont. Id. at 73-74. This series of self-serving and untruthful statements by the petitioner undercuts his credibility when he attempts to assert that he would not have

pleaded guilty in 2005 in the SDNY case if he were aware at that time of the immigration consequences of his plea.

Moreover, there is no support in the record that the petitioner would have proceeded to trial in the SDNY case given the nature of his criminal conduct and the facts surrounding his plea and sentencing. The petitioner made a statement admitting to the Hobbs Act robbery in 2005 and the petitioner has never suggested there was any defense to that crime that would have prevailed at trial. He pleaded guilty pursuant to a plea agreement, and the PSR recommended a reduction in the Guideline Sentencing Range for acceptance of responsibility, to which the sentencing Court agreed. GX 4, at 10; GX 3 ¶ 19.

Facing the strong possibility of a conviction and the possibly of an additional period of incarceration without any realistic advantage from proceeding to trial, the petitioner's testimony that he would have gone to trial if he had known of the immigration consequences is not credible; there is no support for that contention other than the petitioner's self-serving and less-than-credible assertion that he would have done so. See Chhabra v. United States, 720 F.3d 395, 410 (2d Cir. 2013) (approving the decision not to grant coram nobis relief based in part on the district court's findings that the petitioner was not credible when he stated that he would have gone to trial); Yong Wong Park, 222 F. App'x at 83 ("We conclude

10

that in the context of this case, Park's contention that he would not have pleaded guilty if he had known the deportation consequences that flowed from his guilty plea is not credible.").

Thus, the Court finds that the petitioner is not credible when he states that he would have gone to trial in the SDNY case had he known of the immigration consequences of a conviction. The facts surrounding his conviction, plea, and sentence support the finding that the petitioner would have pleaded guilty even if he had been aware of the immigration consequences of a conviction.

## III.

The Government also asks that the Court make a finding that Lozano's petition would not remedy any legal consequences from his 2005 conviction because Lozano continues to be subject to deportation based on the Vermont conviction. ICE added the Vermont conviction as a basis of removal and the petitioner has conceded that the Vermont conviction is an additional basis for removal. GX 17, at 4; Evid. Tr. 47. However, that question goes beyond the scope of the mandate in this case, and therefore the Court declines to make any specific findings on that issue. See Sompo Japan Ins. Co. of Am. v. Norfolk Southern Ry. Co., 762 F.3d 165, 175 (2d Cir. 2014) ("[W]here the mandate limits the issues open for consideration on remand, the district court

ordinarily may not deviate from the specific dictates or spirit of the mandate by considering additional issues on remand."). The "specific dictates" and "spirit" of the mandate of the Court of Appeals directed this Court to resolve two narrow preliminary questions. The Court of Appeals considered the petition on appeal in its entirety and it could have, if it had thought necessary, directed this Court also to resolve on remand the question whether Lozano's petition would remedy any legal consequences. The Court of Appeals did not direct this Court to make findings on that question, and therefore the Court declines to make findings beyond the "specific dictates" of the mandate. See Puricelli v. Argentina, 797 F.3d 213, 218 (2d Cir. 2015) ("[W]here a mandate directs a district court to conduct specific proceedings and decide certain questions, generally the district court must conduct those proceedings and decide those questions.").

## CONCLUSION

After conducting an evidentiary hearing and considering the arguments of the parties, the Court has made the following findings of fact and conclusions of law in response to the mandate of the Court of Appeals:

1. Sound reasons exist for Lozano's failure to seek earlier coram nobis relief and therefore he was not dilatory in bringing this petition.

12

2. For the reasons explained above, the evidence shows that Lozano would nonetheless have entered a guilty plea in the SDNY case had he known that he was subject to deportation as a consequence of that conviction.

**SO ORDERED.**

**Dated:    New York, New York
           January 30, 2020**          ____/s/ John G. Koeltl_____
                                            **John G. Koeltl
                                            United States District Judge**